UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE<br><br>Plaintiff,<br>v.<br><br>BROWN UNIVERSITY, LIFESPAN CORPORATION, CARE NEW ENGLAND HEALTH SYSTEM, DR. EDWARD HUEY, MASOOD MANOOCHEHRI, COLIN STEIN, and WILLIAM MENARD<br><br>Defendants. | CASE NO. 1:25-cv-00311-MSM-PAS |

**DEFENDANT BROWN UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, Brown University[1] ("Brown," or "Defendant"), submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Amended Complaint ("Complaint")[2] with prejudice. Plaintiff, who was briefly employed by Brown as a Program Coordinator in the Butler Hospital Memory and Aging Program, was subjected to a position elimination when the grant funding that supported the position was lost in late 2024. While at times difficult to follow, the Complaint alleges Brown is liable to Plaintiff for alleged disability discrimination, gender discrimination, national origin discrimination, and race discrimination, in addition to alleged retaliation, in violation of both Title VII, the Americans

[1] As of the date of this Motion to Dismiss, Defendants Edward Huey, Masood Manoochehri, and Colin Stein have not been served with a copy of the Complaint.

[2] As detailed below, Plaintiff has previously amended her Complaint multiple times prior to service upon Defendant. As most of Plaintiff's pleadings have been sealed, some are inaccessible to Brown, though it appears the Complaint has been amended at least twice. While the document served upon Defendant bears the caption "Amended Complaint," for the sake of clarity, Brown refers to the operative pleading as the "Complaint."

with Disabilities Act, and related state laws. Plaintiff further alleges Brown failed to provide a reasonable accommodation, subjected her to alleged retaliatory actions, and allowed a hostile work environment to develop, in violation of the aforementioned statutes. Plaintiff further alleges she was retaliated against in violation of the False Claims Act, 31 U.S.C. § 3730(h) and analogous state law. Brown denies all of Plaintiff's allegations, including that any Brown employee or any other individual subjected her to discrimination, retaliation, or a hostile work environment, and denies that she was retaliated against in any way. Again, as the Complaint itself acknowledges, Plaintiff's position was eliminated due to the loss of grant funding that supported it. Compl., ¶ 79. When Brown lost the funding that supported Plaintiff's position, the position itself was eliminated. *See id*. Notably, Plaintiff does not allege that any similarly situated employee was treated more favorably; does not allege that she was replaced by someone outside her protected class; and does not allege any facts demonstrating discriminatory animus by Brown.

The Court should dismiss the Complaint because it fails to state a claim under any antidiscrimination laws, or any other actionable theory of liability against Brown. Plaintiff's position was eliminated due to nondiscriminatory and nonretaliatory reasons (the loss of funding), which the Complaint acknowledges. *See* Compl., ¶ 79. Additionally, as detailed below, Plaintiff's hostile work environment claims are legally deficient because she has not alleged that any purported harassment was based on her disability or any other protected characteristic, as opposed to legitimate performance management, and her False Claims Act claim fails because she has not alleged any actual or suspected fraud on the federal government. For these reasons, the Court should dismiss Plaintiff's Complaint.

**RELEVANT FACTUAL BACKGROUND**

Plaintiff, formerly employed by Brown University as a Program Coordinator in the Department of Psychiatry and Human Behavior, alleges that she began employment in January 2023. Compl., ¶ 2, 9. The Complaint asserts that Plaintiff had multiple "physical and mental impairments (ADHD, PTSD, panic disorder, and OCD)," which Plaintiff alleges constitute disabilities pursuant to the Americans with Disabilities Act (ADA) as they allegedly substantially limit major life activities that include "concentrating, thinking, communicating, working, interacting with others, sleeping." *See id*. ¶¶ 19–23; 82.

According to the Complaint, Plaintiff accepted an offer of employment with Brown based on the understanding that she would be reporting to Dr. Edward Huey, but was assigned to report to Colin Stein, a research project manager at Brown, in spring 2024. *Id.*, Section VI and ¶ 50. Plaintiff alleges that, on January 30, 2024, she requested various accommodations, but does not specify what they were. *See id.*, ¶¶ 56. Plaintiff alleges she coordinated with Brown's HR and its third-party accommodation administrator, Broadspire, regarding her accommodation requests. *Id.*, ¶¶ 56, 60. While difficult to follow, Plaintiff alleges she was subsequently in a motor vehicle accident, which necessitated time off requests, and on March 22, 2024, Plaintiff requested additional accommodations "connected to her disabilities," including "advance notice (minimum 48 hours) for scheduled meetings," "written communication options and written summaries of verbal instructions due to stress-induced mutism," "flexible scheduling and continuation of Alternative Work Arrangement (AWA) allowing remote work," "no impromptu or same-day meetings without notice," and use of noise-canceling headphones. *Id.*, ¶ 58. Plaintiff alleges that Brown failed to implement all of her requests. More specifically, Plaintiff contends that Brown permitted her to work remotely one day per week, but denied the remote work arrangement

allegedly afforded to her manager, Mr. Stein; subjected her to unannounced meetings regarding her performance; and allegedly failed to "consistently use accessibility recording tools […] especially during unannounced and unexpected same-day meetings" with her supervisor regarding her performance. *See id*., ¶ 60. Plaintiff further alleges her healthcare providers made a new diagnosis of PTSD and panic attacks in April, 2024. *Id*., ¶ 69.

Plaintiff further alleges that Brown instituted structural changes to her research team because of a staffing issue with co-defendant Lifespan, including the assignment of another employee, employed by Lifespan, in work that "mirrored" plaintiff's duties. *Id*. (¶¶ 52–55). As a result of allegedly "raising concerns" about the other individual's participation in a study funded by the NIH, Plaintiff claims she experienced increased supervision, criticism, and scrutiny by unspecified individuals. *Id*. ¶¶ 60–63. Plaintiff further alleges Mr. Stein "harassed Plaintiff" regarding her time off requests "for MVA-related medical appointments, threatening to escalate matters to Ted (Dr. Huey)." *Id*., ¶ 61. Plaintiff alleges that Mr. Stein, her supervisor for a period of time until May, 2024, was responsible for overseeing Plaintiff's work, participated in performance-related meetings, and directed aspects of her work, but the Complaint largely reflects that his role was limited to routine supervisory functions, rather than any independent, actionable conduct (notwithstanding Plaintiff's allegation that she was subjected to "calendar surveillance and micromanagement"). *See* Compl., ¶¶ 13, 50-51, 53, 60-61, 71.

Plaintiff contends that, in May, 2024, Dr. Huey, "who was new to his role" as department Director, issued a same-day meeting request that allegedly caused Plaintiff distress, caused her to suffer a panic attack, and led her to leave the office. *Id*., ¶ 64. She contends that an investigation into her unspecified "reports and emails with HR" resulted in certain personnel changes, including the removal of the Lifespan employee from the team, and Mr. Stein's reassignment from

supervision of Plaintiff. *Id*., ¶¶ 64–67. Plaintiff asserts that, notwithstanding those changes, she continued to experience "social exclusion" which purportedly exacerbated unspecified symptoms. *Id*. ¶¶ 68–71. She alleges she experienced a "workplace crisis" on August 28, 2024 as a result of the "cumulative effect" of the alleged events of several months, which left her "physically frozen, and unable to speak." *Id*., ¶ 77. Plaintiff alleges that, in September, 2024, she was informed that her position was being eliminated due to lack of funding, and that her termination was effective in October, 2024. *Id*., ¶¶ 77–79. As to Dr. Huey, he is not alleged to have done or failed to do anything other than request a meeting with Plaintiff in May, 2024. For his part, Mr. Manoochehri is not alleged to have done anything. *See generally* Complaint.

**STANDARD OF REVIEW**

This Court is well aware of the standard of review on a Motion to Dismiss. *See, e.g., Spino v. Rushmore Loan Management Services, LLC*, 606 F.Supp.3d 1, 3 (D.R.I. 2022). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. at 102–103 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, *supra*, 556 U.S. at 678. The Complaint's allegations must be sufficiently precise to raise a right to relief beyond mere speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, "[t]he complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) (citing *Bell Atl. Corp.*, *supra* at 559).

Under Rule 12(b)(6), a Complaint must be dismissed when "it clearly appears, according to the facts alleged, that the plaintiff cannot recover. . . ." *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005). Notably, though a *pro se* plaintiff's pleadings may be entitled to liberal interpretation, plaintiff must still comply with "substantive law" and provide "requisite supporting facts." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997); *see also Andrews v. Bechtel Power Corp*., 780 F.2d 124, 140 (1st Cir. 1985) ("The right of self-representation is not a license not to comply with relevant rules of procedural and substantive law.") (quotation omitted); *Reynolds v. Coyne-Fague*, No. CV 20-00489-WES, 2021 WL 4894200, at *1 (D.R.I. Oct. 20, 2021) ("Pro se litigants […] are not excused from compliance with procedural rules or substantive law") (*citing Emrit v. Universal Music Group, Inc.*, No. CA 13-181-ML, 2013 WL 3730420, *1 (D.R.I. Jul. 12, 2013)).

## ARGUMENT

### I. THE COURT SHOULD DISMISS PLAINTIFF'S ADA AND ANALOGOUS STATE LAW CLAIMS FOR DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION BECAUSE THEY FAIL AS A MATTER OF LAW.

#### i. Plaintiff Fails to Allege Facts Demonstrating She was a Qualified Individual with a Disability, a Necessary Element of Plaintiff's ADA and Analogous State Law Claims.

The ADA requires that employers provide reasonable accommodations to qualified individuals with a known disability, unless doing so would impose an undue hardship. *See* 42 U.S.C. § 12112(b)(5)(A). To succeed on an ADA discrimination claim, a plaintiff must show that "(1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential

functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against her because of the alleged disability." *Velez-Ramirez v. Puerto Rico through Sec'y of Justice*, 827 F.3d 154, 159 (1st Cir. 2016). Plaintiff fails to plausibly allege that she was a qualified individual with a disability, or, as addressed below, that Brown took an adverse action against her *because of* the alleged disability. As a result, the Court should dismiss Plaintiff's Complaint.

Plaintiff alleges she successfully performed job duties in prior employment settings when "informal accommodations" were in place, and that Dr. Huey's "flexible management style" at Columbia University enabled her to "thrive." Compl., ¶ 43. Yet Plaintiff's Complaint is silent as to whether she was actually able to perform the essential functions of her position at Brown either initially or following the assignment of a new supervisor, Mr. Stein, in Spring 2024. *See* Compl., ¶ 50. Significantly, the Complaint alleges that Plaintiff's position as Program Coordinator for the NIH-funded Memory and Aging Program required on-site work at Butler Hospital with coordination with multiple team members and supervisors. Compl., ¶¶ 9, 47-48 (noting her offer letter stated she would be reporting to Butler Hospital – Weld Building) & ¶ 60(b). These in-person functions are inconsistent with Plaintiff's request for fully-remote work as an accommodation. Moreover, the allegations demonstrate that she was not able to perform the essential duties of her position, with or without accommodations, where she was unable or unwilling to work with the supervisor to whom she was assigned. *See id*., ¶ 51.

More specifically, the allegations in the Complaint show Plaintiff rejected her new supervisor's authority, which Plaintiff characterizes as a "bait-and-switch," and when Plaintiff requested certain accommodations following the assignment of Mr. Stein, including fully-remote work, she was unhappy with the fact that Brown purportedly "REQUIRED Plaintiff to be onsite

four days per week" while Mr. Stein worked remotely. *Id.*, ¶ 60 (emphasis in original). Notably, Plaintiff concedes that Brown did provide her with one day of remote work per week. *Id*. The Complaint also acknowledges that Plaintiff's position required in-person coordination with research participants, IRB compliance activities, and collaboration with a team of multiple members in person at Butler Hospital. *See* Compl., ¶¶ 48, 52-55, 62, 65, 71. The allegations in the Complaint show that the accommodations she sought were not due to any disability, but to insulate herself from the newly-assigned supervisor who no longer provided her the flexibility to which she had become accustomed under Dr. Huey.

Plaintiff's Complaint alleges she experiences "dissociation during evaluative or adversarial situations" and "panic episodes triggered by perceived scrutiny or authority figures," which "limit Plaintiff's ability to interact with others […] in workplace settings involving confrontational supervision or critical feedback." *Id.*, ¶ 36. She also alleges she suffers from panic attacks "triggered by perceived threats from authority figures; dissociative episodes during unpredictable confrontational interactions," and "selective mutism during acute stress." *Id.*, ¶36.

Accepting the allegations as true for the purposes of this motion to dismiss, Plaintiff's alleged disabilities would have prohibited her from being in any sort of "evaluative situation," or having any "unpredictable confrontational interactions" with supervisors or staff, or being subjected to any "perceived threat" from any employee, regardless of whether such perception was objectively reasonable or even grounded in reality, as such interactions with others could allegedly lead her to experience a dissociative episode. Compl., ¶¶ 35-36. The allegations in the Complaint demonstrate that Plaintiff could not have fulfilled her duties remotely, or on another team, "as she still would have had to work collaboratively with others who could trigger her at any time." *See Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 66 (1st Cir. 2020) (affirming grant of summary

judgment for employer on grounds that remote work and reassignment were not reasonable accommodations where plaintiff "still would have been a member of a larger [. . .] organization and subject to supervision," and remote work or reassignment were not reasonable accommodations where PTSD was allegedly triggered by such interactions).

Plaintiff's Complaint fails to set forth factual allegations showing how any of the requested accommodations would have allowed her to perform the essential functions of her position where Plaintiff has alleged that a myriad set of interactions with coworkers could allegedly lead to dissociative episodes, mutism or panic attacks. As a result, the facts alleged fail to demonstrate Plaintiff was "qualified to perform the essential functions of the job" either with or without accommodations, and Plaintiff's ADA claims should be dismissed for failure to state a claim upon which relief may be granted. *See Velez-Ramirez*, *supra*, 827 F.3d at 159.

Additionally, Plaintiff's claim that she was a "qualified individual" is undermined by her own allegation that her treating psychiatrist assessed her as "temporarily unemployable" for over sixteen months following her termination, "completely unable to engage in any work-related activities." Compl., ¶ 3. Though Plaintiff claims this was due to unspecified "workplace-inflicted trauma," the allegation that she was completely unable to work for such an extended period demonstrates she was not able to perform the essential functions of her position at the time of her employment, particularly given that she alleges many of the same symptoms (including dissociation, panic attacks, and selective mutism) were present *during* her employment. *See* Compl., ¶¶ 35-36, 64, 77.

Indeed, Plaintiff's own pleading compels the same conclusion. She alleges that her treating psychiatrist completed a Treatment Clinician Report finding her "Unable to work for at least 12 months," Compl., ¶ 31, and that the New York City Human Resources Administration formally

determined her “EXEMPT FROM PARTICIPATING IN TEMPORARY ASSISTANCE WORK ACTIVITIES” because she was “currently unable to work due to a medical issue,” *id.*, ¶ 32. A plaintiff who has represented to a governmental entity that she is unable to work cannot simultaneously establish that she is a “qualified individual” capable of performing the essential functions of her position unless she proffers a sufficient explanation reconciling the two positions. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–07 (1999). The Complaint offers no such explanation. To the contrary, it alleges that the very symptoms underlying her incapacity—dissociation, panic attacks, and stress-induced mutism—were present during her employment and were triggered by the ordinary supervisory and evaluative interactions the Complaint concedes were essential to her role. For this independent reason, Plaintiff was not a “qualified individual with a disability,” and her ADA, Rehabilitation Act, and analogous state-law discrimination claims fail.

**ii. The Disability Retaliation Claims Fail Due to Insufficient Causation.**

Plaintiff’s ADA retaliation claim, and her corresponding claim for an alleged violation of the RIFEPA for alleged retaliation based on disability (Count VII) fails for the additional reason that the Complaint does not allege any facts demonstrating, or even suggesting, a causal connection between any conduct protected by the ADA and an adverse employment action. Plaintiff alleges that after she requested accommodations in May, 2024, she complained to Human Resources about unspecified “discriminatory treatment, and objected to” meetings regarding her performance, but was subjected to alleged retaliation that included “increased scrutiny, unannounced meetings,” alleged “denial of accommodations, hostile comparisons, isolation, and termination.” Compl., ¶ 92. Plaintiff’s own allegations establish that the “adverse actions” she identifies, including performance-based meetings, supervision, and the elimination of her position, occurred for legitimate, non-retaliatory reasons and were unrelated to any protected activity.

First, Plaintiff's allegation that Brown's continued performance meetings with Plaintiff constituted retaliation, or somehow undermined her accommodations, cannot form a factual basis for these claims, because performance management conducted with support and guidance from Human Resources, as the Complaint alleges, does not constitute retaliation. *See, e.g.*, *Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 65 (1st Cir. 2020) (reasonable accommodations do not include excusing past misconduct or poor performance).

Second, the Complaint fails to allege facts that plausibly suggest Brown took an adverse employment action against Plaintiff *because of* her alleged disability, as is required to state an ADA discrimination or retaliation claim. *See Brader v. Biogen Inc.*, 983 F.3d 39, 53 n. 21 (1st Cir. 2020) ("To have made a retaliation case, Brader would have needed to prove: "(1) he engaged in protected conduct; (2) he was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct.") (cleaned up).

As support for her retaliation claims, Plaintiff alleges there is an "inference of retaliation" because her September 2024 notice of termination, effective the following month, occurred after she suffered an alleged panic attack in the workplace. *Id.*, ¶ 80; *see also* ¶ 93. Yet Plaintiff's alleged accommodation request occurred five months prior, in May. Compl., ¶ 58. Critically, Plaintiff's position at Brown was funded entirely through an NIH R01 grant. *See, e.g.*, Compl., ¶ 73. When that grant funding was eliminated, Plaintiff's position was eliminated—a fact the Complaint itself acknowledges. Compl., ¶ 79. Plaintiff relies entirely on the alleged temporal proximity between unspecified protected activity and her separation as grounds for establishing her retaliation claim. *Id*. at ¶ 93. Plaintiff alleges she sought accommodations in January, 2024, and May, 2024. Compl., ¶¶ 56, 58. The Complaint itself, however, identifies intervening events including a restructuring and the loss of grant funding that led to the elimination of Plaintiff's position, which break any

causal chain. *See* Compl., ¶ 79. Significantly, the Complaint alleges the grant funding for Plaintiff's position "continued through May 2025" (Compl., ¶ 79(a)), but fails to allege that any similarly situated employee outside the protected class was retained, or that her work was assigned to others using the same funds. Plaintiff fails to allege that she was terminated *because* she engaged in protected conduct related to an alleged disability. *See* Compl. at pp. 11–14.

Temporal proximity alone is insufficient to establish causation where the Complaint has also provided Brown's non-retaliatory explanation for her termination. *See Echevarría v. AstraZeneca Pharmaceutical LP*, 856 F.3d 119, 138 (1st Cir. 2017) (affirming dismissal of retaliation claim and noting that proximity between protected conduct and adverse employment action alone was insufficient to establish pretext and overcome defendant's non-retaliatory explanation); *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 121 (1st Cir. 2024) ("the mere fact that Rios was terminated less than two months after engaging in protected conduct would not […] allow a reasonable jury to infer that Centerra's reason for firing Rios was pretextual"); *see also Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) (Noting that "without some corroborating evidence suggestive of causation ... a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action," and holding that a "gap of four months, on its own, is not 'very close' for establishing causality"). Here, the alleged accommodation requests in January and May 2024 preceded Plaintiff's September 2024 termination by four to eight months. *See* Complaint, ¶¶ 56, 58. Pursuant to this binding First Circuit precedent, this period is insufficient to establish causation absent additional corroborating evidence of a retaliatory motive, which Plaintiff has not alleged. *See Ahern, supra, at 58.*

Plaintiff's conclusory assertions of retaliatory motive are insufficient. The Rule 12(b)(6) pleading standard "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court may "not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993). Nowhere in the Complaint does Plaintiff allege that Brown University terminated Plaintiff *because of* her alleged disability or *because* she had requested accommodations. As such, the ADA discrimination and retaliation claims fail.

**iii. The Complaint Fails to State a Claim for Failure to Accommodate.**[3]

Plaintiff's ADA claim for alleged failure to accommodate fails for the additional reason that Plaintiff's complaint alleges Brown engaged in the interactive process, involved HR and Broadspire, its TPA, and provided an alternative work arrangement and flexible work arrangement consisting of one day of remote work per week. Amended Compl., p. 10, ¶ 58. Plaintiff's disagreement with the outcome of her requests for accommodation does not constitute a failure to engage in the interactive process; a claimant who establishes that they are a qualified individual with a disability in need of accommodation to perform the essential duties of their job is not entitled to the accommodation of their choice, but rather to a *reasonable* accommodation. *See, e.g., Castro-Medina v. Procter & Gamble Commercial Co.*, 565 F.Supp.2d 343, 375 (D. P.R. 2008); *see also Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (affirming dismissal of failure to accommodate claim and noting distinction between a requested accommodation of permission to walk away from conflicts with coworkers and a "vastly different matter […] to be given permission to walk away from a supervisor engaged in the act of supervision."). Here, Brown provided

[3] Claims under Title I of the ADA and § 504 of the Rehabilitation Act are analyzed under the same standards, and Plaintiff's Rehabilitation Act claim fails for the same reasons as her ADA claims. *See EEOC v. Amego, Inc.*, 110 F.3d 135, 143 (1st Cir.1997); *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 23 (1st Cir. 2001).

Plaintiff with accommodations including one day of remote work per week and engaged with her through the interactive process, even if Plaintiff preferred different accommodations.

Moreover, Plaintiff claims Brown failed to implement requested accommodations because it continued to schedule "performance expectation" meetings without providing her advance notice or agendas of same. To the extent this requested accommodation sought to excuse past misconduct, or limit the means by which Brown could regulate Plaintiff's performance, a requested accommodation that excuses misconduct is "unreasonable as a matter of law." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012); *see also Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 66 (1st Cir. 2020) (collecting cases). Plaintiff's requested accommodations would have effectively required Brown to forego legitimate performance management, which falls outside the scope of the ADA's reasonable accommodation requirement.

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT UNDER THE ADA.

Plaintiff's hostile work environment claims likewise fail because (i) the conduct alleged does not rise to the level of a "hostile work environment" prohibited by law, and (ii) the claims similarly lack causation. To establish a hostile work environment claim, a plaintiff must show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [her] employment and create an abusive working environment." *Pepper v. Brown Univ.*, 701 F. Supp. 3d 201, 206–07 (D.R.I. 2023) (quoting *Quiles–Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006)). "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' to establish an objectively hostile or abusive work environment." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 44 (1st Cir. 2011) (quotations omitted). None of the allegations in the Complaint that allegedly support the hostile

work environment claims rise to the level of an objectively hostile or abusive work environment permeated with "discriminatory intimidation, ridicule, and insult." *See Quiles–Quiles, supra*, 439 F.3d at 7; Compl., ¶ 71. The allegations do not appear related to any protected characteristic or concern any alleged disability. *Id*.

Relatedly, there is no allegation that the conduct Plaintiff alleges caused a hostile work environment was directed at her *because* she had a disability. *See* generally Compl. While the Complaint alleges Mr. Stein "harassed" Plaintiff regarding time off requests, such requests were allegedly "for MVA-related medical appointments," not to address any alleged disability listed in the Complaint. Compl., ¶ 61. Moreover, the Complaint is devoid of any allegation that either Brown or any coworker harbored *disability-based* discriminatory animus against Plaintiff, let alone took any action directed toward her because she had a disability, which serves as an additional basis for dismissal. *See, e.g., Brader v. Biogen, Inc.*, 983 F.3d 39, 63-4 (1st Cir. 2020).

## III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR TITLE VII GENDER, RACE OR NATIONAL ORIGIN DISCRIMINATION OR RETALIATION.

Plaintiff alleges she was subjected to disparate treatment "based on Plaintiff's race (Hispanic/Latina), national origin (Dominican), and sex (female), in violation of Title VII. Compl., ¶ 103 (f). As a basis for her gender discrimination claims against Brown, Plaintiff alleges her male supervisor, Mr. Stein, was permitted to work remotely, while her remote work accommodation was allegedly denied. *Id*., ¶ 103 (a). She claims her manager was enrolled in management training, which was unavailable to her, and when she and unspecified female colleagues "raised concerns" about an unspecified matter, "they were told they were 'too sensitive' and 'to grow a thicker skin,'" and that "female coordinators were subjected to heightened scrutiny and surprise performance meetings." *Id*., at ¶¶ 103 (c)-(d). Plaintiff further alleges discrimination based on race and national

origin, alleging she was "referred to as a 'token,' scrutinized spelling of IRB materials," and that Brown "micromanaged and overly reviewed" her work. *Id.*, ¶¶ 103 (g). Plaintiff's disparate treatment discrimination claims rely on conclusory allegations and an inapt comparison to a single male employee, *her own manager* (Compl., ¶ 103(a)-(b)), who is not a proper comparator. A supervisor who holds a different position, with different, supervisory responsibilities, is not "similarly situated" to a subordinate employee. *See, e.g., O'Horo v. Boston Medical Center Corporation*, 131 F.4th 1, 16-17 (1st Cir. 2025). Plaintiff claims Mr. Stein was allowed to work remotely and enroll in management training (which, as Plaintiff was allegedly told, was "reserved for managers"). Compl. ¶ 103. These differences confirm Mr. Stein is not a valid comparator.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment[ ] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A disparate treatment claim is a claim of intentional discrimination. *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 117 (1st Cir. 2015). "To state a claim to relief, a complaint asserting sex discrimination must plausibly allege that the plaintiff experienced an adverse employment action taken on the basis of her gender." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) (Title VII gender discrimination claim). In assessing a Title VII discrimination claim, the proper focus is on the protected characteristic of the individual plaintiff, and to constitute unlawful discrimination under Title VII, an employment action must have been taken "because of" the characteristic. *See, e.g.*, *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 683 (2020). Plaintiff alleges she was referred to as a "token" and that unspecified individuals scrutinized her spelling (Compl., ¶ 103(g)), but these isolated allegations, which Brown denies, do not plausibly suggest that any adverse employment action was taken *because of* her race or national origin. *See Iqbal*, 556 U.S. at 678

("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). The Complaint fails to plausibly allege similarly situated comparators, or any facts supporting discriminatory intent on behalf of Brown University, or that any employment action was taken against Plaintiff because of a characteristic protected under Title VII. The Complaint's failure to identify any valid comparator or to allege any fact suggesting discriminatory animus renders Plaintiff's Title VII claims implausible. Further, Plaintiff has not alleged that she suffered an adverse employment action on account of her gender, race, or national origin. "An 'adverse employment action' is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010) (citation removed); *Stratton v. Bentley Univ.*, 113 F.4th 25, 39 (1st Cir. 2024).

To the extent Plaintiff's Complaint alleges a Title VII retaliation claim, it also fails for this reason. Plaintiff alleges "retaliatory conduct included isolating Plaintiff within fragmented internal processes and abandoning her." Compl., ¶ 103(i). This falls short of conduct sufficient to trigger Title VII's antiretaliation provision, which covers employer actions that are "materially adverse" to a reasonable employee such that they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Ahern v. Shinseki*, 629 F.3d 49, 55 (1st Cir. 2010). Allegations of "isolation" and being "abandon[ed]," without more, do not constitute materially adverse actions. Simply put, these are not actionable adverse employment actions. *See, e.g., Morales-Vallelanes, supra*, at 35. Even assuming the termination of Plaintiff's employment constitutes an adverse action, Plaintiff has failed to allege that her termination was

connected to her gender, race, or national origin rather than the loss of grant funding—a legitimate, non-discriminatory reason that Plaintiff herself acknowledges in the Complaint.[4]

## IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR WHISTLEBLOWER RETALIATION (COUNT 9).

To state a retaliation claim under the anti-retaliation provisions of the Federal False Claims Act (FCA), 31 U.S.C. § 3730(h), a plaintiff must plausibly allege (1) that they engaged in protected activity; (2) the employer had knowledge of that activity; and (3) the employer retaliated against the employee because of that activity. The Complaint fails at each element.[5]

First, Plaintiff does not allege any protected activity under the FCA. The Complaint does not identify any actual or reasonably suspected fraud against the federal government, nor does it allege facts showing that Brown was on notice of such claims. Protected activity under § 3730(h) is limited to conduct aimed at investigating or stopping fraud on the federal government—*i.e.*, conduct tied to the submission of false or fraudulent claims for payment. "The 'sine qua non' of a False Claims Act violation is, as the name of the statute would suggest, an 'actual false claim.' " *United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 129 (D. Mass. 2016). Allegations of misconduct, or regulatory or internal policy violations, are insufficient. *Elliott-Lewis v. Abbott Labs., Inc.*, 411 F. Supp. 3d 195, 208 (D. Mass. 2019) ("Plaintiff has not established that she engaged in protected

[4] As to Plaintiff's RIFEPA claims (Count VII) alleging discrimination and retaliation based on disability and sex (R.I. Gen. Laws §28-5-7), and her RICRA claims (Count VIII) alleging a deprivation of equal employment rights based on disability and sex (R.I. Gen. Laws §42-112-1), these state law claims fail for the same reasons as Plaintiff's federal claims. Rhode Island courts generally apply the same analytical framework to state employment discrimination claims as federal courts apply to Title VII and ADA claims. *See, e.g., Casey v. Town of Portsmouth*, 861 A.2d 1032, 1037 (R.I. 2004). Because Plaintiff has failed to state a claim under Title VII or the ADA for the reasons set forth above, her parallel state law claims likewise fail.

[5] The related claim under the Rhode Island Whistleblowers' Protection Act (RI WPA), R.I. Gen. Laws § 28-50-3, fails for similar reasons. The RI WPA requires a plaintiff to allege that she reported or opposed "a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States," and suffered a specified adverse employment action as a result. R.I. Gen. Laws. § 28-50-3 (4). The Complaint fails to do so.

conduct under the FCA because she complained primarily about her relationship with her managers, violations of company policy, and regulatory violations that have an unlikely connection to the submission of fraudulent claims to the Government"); *see also Guilfoile v. Shields*, 913 F.3d 178, 195 (1st Cir. 2019) (affirming dismissal of FCA retaliation claim, noting, "Even in the FCA retaliation context, there must be a reasonable connection between the alleged conduct and the submission of claims within the purview of the FCA."). The Complaint's allegations that a Lifespan employee worked on a Brown grant "without proper authorization" and that there were "NIH workplace safety violations" (Compl., ¶ 110) do not constitute an alleged submission of false claims to the government for payment.

"Protected conduct under the FCA is limited to activities that reasonably could lead to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." *United States v. Pfizer, supra,* 188 F.Supp. 3d at 129 (cleaned up). "Reports of 'regulatory failures,' without a connection to 'fraudulent claims knowingly submitted to the government,' do not constitute protected conduct under the FCA." *Id.* Here, all alleged "protected activity" appears in ¶ 110 and consists of Plaintiff's "concerns" regarding an individual allegedly working on a federally-funded grant "without proper authorization," alleged unspecified workplace safety violations, and unspecified "supervisory misconduct and management restructuring." Compl., ¶ 110. These allegations are insufficient to state a claim for a violation of the FCA upon which relief may be granted because the Complaint does not allege that Defendant submitted or intended to submit any false claim to the federal government. *See* Compl., ¶ 111. Plaintiff's vague assertions of "off-the-books" or "improper" conduct are devoid of any facts allegedly linking such conduct to a fraud on the government. *See id.* The Complaint does not allege that Brown engaged in any

conduct that could constitute a "false claim" under the FCA. *See* 31 U.S.C. § 3729(a)(1) (defining false claims). The absence of any such allegation is fatal to Plaintiff's FCA claim.

Plaintiff also fails to plausibly allege any causal connection between her raising alleged "concerns" and later termination, other than the fact that she was terminated at some point after "raising these concerns," which necessitates dismissal of these claims. Finally, to the extent Plaintiff purports to assert or "preserve" a *qui tam* claim under the False Claims Act on behalf of the United States (*see* Compl., Prayer for Relief ¶ 14), any such claim fails as a matter of law because a *pro se* litigant cannot maintain a *qui tam* action on behalf of the Government. *See Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126–27 (9th Cir. 2007) ("we cannot interpret [the general *pro se* provision, 28 U.S.C.] § 1654 as authorizing *qui tam* relators to proceed *pro se* in FCA actions"); *Timson v. Sampson*, 518 F.3d 870, 873–74 (11th Cir. 2008) ("the district court did not err in dismissing Timson's complaint because Timson could not maintain a *qui tam* suit under the FCA as a *pro se* relator").

The related claim under the Rhode Island Whistleblowers' Protection Act (RI WPA), R.I. Gen. Laws § 28-50-3, fails for similar reasons. The RI WPA requires Plaintiff to allege that she reported or opposed "a violation, which [she] knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States." R.I. Gen. Laws § 28-50-3(4). The Complaint's vague allegations of "concerns" about an employee's "improper" participation in grant-funded work do not identify any law, rule, or regulation that Plaintiff reasonably believed was being violated. Moreover, even assuming Plaintiff engaged in protected activity under the RI WPA, she has failed to plausibly allege that her termination was causally connected to such activity, as the

Complaint itself identifies a legitimate, non-retaliatory reason for her termination – the loss of grant funding for her position. *See* Compl., ¶ 79.

WHEREFORE, pursuant to Rule 12(b)(6), Defendant requests that the Court grant this Motion and Dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

**BROWN UNIVERSITY**

*/s/ Mitchell R. Edwards*
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island 02903
Telephone: (401) 274-2000
Facsimile: (401) 277-9600
medwards@hinckleyallen.com

Dated: May 22, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2026 a copy of the foregoing document was filed through the ECF filing system, and will be sent electronically to the registered participants identified on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system:

Matthew H. Parker, Esq.
WHELAN CORRENTE & FLANDERS LLP
200 Westminster Street, Suite 710
Providence, RI 02903

James A. Musgrave, Esq.
ROBERTS, CARROLL, FELDSTEIN & PEIRCE, INC.
Ten Weybosset Street, 8th Floor
Providence, RI 02903

I hereby further certify that on this date, I served the foregoing by causing a true and correct copy of the same to be sent by first class mail to the following:

Jane Doe
3980 Hillman Ave., Apt. 4E
Bronx, NY 10463

*_/s/ Mitchell R. Edwards_*